**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARL WISTISEN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALIBABA GROUP HOLDING LIMITED, and EDDIE YONGMING WU,<br><br>Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Carl Wistisen ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Alibaba Group Holding Limited ("Alibaba" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Alibaba securities between June 26, 2025 and June 24, 2026, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Alibaba securities during the Class Period and was economically damaged thereby.

7.      Defendant Alibaba is a Chinese multinational technology company specializing in e-commerce, retail, Internet, and technology.

8.      Alibaba is incorporated in the Cayman Islands. Its principal place of business is located at 26/F Tower One, Times Square, 1 Matheson Street, Causeway Bay, Hong Kong S.A.R., People's Republic of China. Alibaba's agent for service in the United States is Corporation Service Company located at 19 West 44th Street, Suite 200, New York, NY 10036. Alibaba's

American Depositary Shares ("ADSs") trade on the New York Stock Exchange ("NYSE") under the ticker symbol "BABA".

9.      Defendant Eddie Yongming Wu ("Wu") served as the Company's Chief Executive Officer ("CEO") at all relevant times.

10.     Defendants Wu is also referred to herein as the "Individual Defendant."

11.     The Individual Defendant:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

12.     Alibaba is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Alibaba under *respondeat superior* and agency principles.

14. Defendant Alibaba and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

15. On December 23, 2024, President Biden signed into law the National Defense Authorization Act for fiscal year 2025 ("FY2025 NDAA"). The FY2025 NDAA, in relevant part, included the following language concerning Chinese military companies:

"The term "Chinese military company" [. . .] means an entity that is [. . .] directly or indirectly [. . .] controlled by [or] directly or indirectly [. . .] affiliated with [. . .] the Chinese Ministry of Industry and Information Technology (MIIT)[.]"

NDAA Sec. 1260H(g)(2).

16. The MIIT is an executive agency of the Chinese government responsible for regulating, developing, and planning the country's industrial, manufacturing, telecommunications, and software sectors. Companies like Alibaba must obtain an operating license from the MIIT. As such, under the language of NDAA Sec. 1260H(g)(2), Alibaba qualified as a Chinese military company.

### Materially False and Misleading
### Statements Issued During the Class Period

17. On June 26, 2025, Alibaba filed its Annual Report on Form 20-F for the year ended March 31, 2025 (the "2025 Annual Report"). Attached to the 2025 Annual Report were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendant Wu attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

4

18.    Also attached to the 2025 Annual Report, and incorporated by reference therein, was the Hong Kong Annual Report for Fiscal Year 2025 in English (adjusted version) (the "2025 Hong Kong Report").

19.    The 2025 Hong Kong Report stated, in pertinent part:

"Under the Telecommunications Regulations of the PRC, or the Telecommunications Regulations, promulgated on September 25, 2000 by the State Council of the PRC and most recently amended in February 2016, *a telecommunications service provider in China must obtain an operating license from the MIIT*, or its provincial counterparts. The Telecommunications Regulations categorize all telecommunications services in China as either basic telecommunications services or value-added telecommunications services. *Our online and mobile commerce businesses*, as well as Youku's online video businesses, *are classified as value-added telecommunications services.*"

(Emphasis added.)

20.    Additionally, the 2025 Hong Kong Report contained the following risk disclosure:

"Since 2020, the U.S. administration has issued executive orders prohibiting investments by any U.S. persons in publicly traded securities of certain Chinese companies that are deemed owned or controlled by the Chinese military and Chinese defense and surveillance technology companies. As a result, the American depositary shares of China Telecom Corporation Limited, China Mobile Limited and China Unicom (Hong Kong) Limited were delisted from the NYSE."

21.    The statements in ¶¶ 19-20 were materially false and/or misleading because, despite Alibaba's awareness that Chinese military companies being targeted by the U.S. government, and the fact that, under Section 1260H(g) of the NDAA, Alibaba was considered a Chinese military company, Alibaba failed to warn of the risk that it was a Chinese military company. Indeed, the risk disclosure named other Chinese companies that were affected by the U.S.'s crackdown on Chinese military companies, but failed to warn investors of the risks it faced.

22.    On May 20, 2026, the Company filed with the SEC its Annual Report on Form 20-F for the year ended March 31, 2026 (the "2026 Annual Report"). Attached to the 2026 Annual Report were signed SOX certifications signed by Defendant Wu attesting to the accuracy of

financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

23.     The 2026 Annual Report contained the following risk disclosure:

***The development, deployment and application of artificial intelligence technologies expose us to significant operational, legal and reputational risks.***

AI models and systems require vast volumes of data for training and inference, which increases the risk of data breach and misuse as well as copyright violations. ***During training and inference, our models may inadvertently access and reproduce sensitive business or personal information. Such incidents could result in violations of data protection laws and regulatory actions and penalties. Even perceived or alleged misuse of personal data or unauthorized distillation of third-party models by our large language models may result in loss of confidence or trust in our systems and have a material adverse effect on our reputation, business and prospects.*** The training data used for our large language models and AI systems may also include content that is subject to copyright or other intellectual property protections. We have faced, and may face additional claims from content owners alleging unauthorized use of their materials for AI training, which could result in litigation, licensing costs, or requirements to modify or retrain our models.

(Underlined emphasis added.)

24.     The statement in ¶ 23 was materially false and/or misleading at the time it was made because it couched the Company's distillation of third-party models as a mere hypothetical or "inadvertent[]", when in fact it was in the middle of carrying out such distillation attacks against Anthropic PBC's Claude AI model.

25.     The statements referenced in ¶¶ 19, 20 and 23 above were materially false and/or misleading because they misrepresented and failed to disclose adverse facts pertaining to the Company's business which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) under the NDAA, any entities directly or indirectly controlled by or affiliated with the MIIT were considered a Chinese military company; (2) Alibaba was directly or indirectly controlled by or affiliated with the MIIT; (3) the risk of Alibaba carrying out distillation attacks against third-

party AI models was not a mere hypothetical or inadvertent, but ongoing; and (4) as a result, Defendants' public statements about Alibaba's business, operations, and prospects were materially false and/or misleading at all relevant times.

## **THE TRUTH EMERGES**

26.    On June 8, 2026, after market hours, the U.S. Department of Defense released an updated list identifying Chinese military companies. Alibaba was included in the list due to its direct or indirect control by or affiliation with the MIIT.

27.    On this news, Alibaba share prices dropped $4.69, or approximately 3.9%, over two trading days to close on June 10 at $115.38 on June 10, 2026.

28.    On June 24, 2026, shortly before markets closed, Bloomberg published an article titled "Anthropic Accuses Alibaba of 'Illicitly' Accessing AI Models".

29.    The article stated, in pertinent part:

Anthropic PBC accused Chinese technology giant Alibaba Group Holding Ltd. of waging a large-scale effort to "illicitly" access its Claude artificial intelligence model using thousands of fraudulent accounts that undermine the US AI developer's decision to keep its products out of China.

***Anthropic said that a campaign by operators linked to Alibaba's Qwen AI lab targeted Claude's most prized capabilities, including software engineering and agentic reasoning, according to a letter that the AI startup sent to several US senators and White House officials.*** The company said it was the biggest attempt so far by a Chinese company to piggyback on the work of top US labs.

In its letter, Anthropic said that ***the effort involved 28.8 million exchanges with Claude between April and June through almost 25,000 fraudulent accounts***, according to people familiar with the document and a copy seen by Bloomberg News. The company said the Alibaba campaign resembled past efforts by other Chinese developers that Anthropic flagged in a blog post earlier this year.

\*    \*    \*

***Anthropic warned that Alibaba and other Chinese labs are making systematic and unauthorized use of results from leading US models to develop a rival generation of chatbots at a fraction of the cost via a practice known as adversarial***

7

*distillation.* It cautioned that AI systems built using this method often lack safety guardrails, and the firm urged the Trump administration to step up efforts to halt the practice.

(Emphasis added.)

30.     On this news, the price of Alibaba ADSs fell $2.80 per ADS, or 2.7%, to close at $99.80 per ADS on June 24, 2026. The next day, it fell a further $4.73 per ADS, or 4.7%, to close at $95.07 on June 25, 2026.

31.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the publicly traded securities of the Company during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Company securities were actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

34.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

35.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

38.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Company shares met the requirements for listing, and were listed and actively traded on NYSE, an efficient market;

- As a public issuer, the Company filed periodic public reports;

- The Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- The Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- The Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

39.    Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such

information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

40.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

**COUNT I**
**For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

41.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43.      During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

44.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Company securities during the Class Period.

45. Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's' allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

46. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company personnel to members of the investing public, including Plaintiff and the Class.

47. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Company securities during the Class Period in purchasing

Company securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

48.    Had Plaintiff and the other members of the Class been aware that the market price of Company securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Company securities at the artificially inflated prices that they did, or at all.

49.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

50.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Company securities during the Class Period.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendant**

51.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52.    During the Class Period, the Individual Defendant participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's business practices.

53.    As officers and/or directors of a publicly owned company, the Individual Defendant had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

13

54.     Because of their positions of control and authority as senior officers, the Individual Defendant was able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendant exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendant, therefore, was a "controlling person" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company securities.

55.     By reason of the above conduct, the Individual Defendant is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

14

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: August 4, 2026                                **THE ROSEN LAW FIRM, P.A.**

                                                     /s/ Phillip Kim
                                                     Phillip Kim, Esq.
                                                     Laurence M. Rosen, Esq.
                                                     275 Madison Avenue, 40th Floor
                                                     New York, NY 10016
                                                     Telephone: (212) 686-1060
                                                     Fax: (212) 202-3827
                                                     Email: philkim@rosenlegal.com
                                                            lrosen@rosenlegal.com

                                                     *Counsel for Plaintiff*

15